**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

MARK ANTHONY BAIAMONTE,    *

       Plaintiff,    *

   v.    *   Civil Action #02-CV-3567
          JURY TRIAL DEMANDED

JAMES JANECKA, DAVIS R. RUARK,    *
MATTHEW E. BROWN, GEORGE W.
HILL CORRECTIONAL FACILITY,    *
OFFICE OF THE DISTRICT ATTORNEY
OF DELAWARE COUNTY, JANE & JOHN    *
DOE'S, C.D. DRYDON [sic] AND
FOOD LION,    *
       Defendants.

## ORDER

    AND NOW, this    day of    , 2003, it is ORDERED that

the Motion of Commissioner Catherine Dryden and State's Attorney Davis R. Ruark for

Summary Judgment is GRANTED.  Judgment is entered in favor of Defendants Dryden and

Ruark and against Plaintiff.

BY THE COURT:

_____

                   J.

<div align="center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

</div>

MARK ANTHONY BAIAMONTE,                    *

      Plaintiff,                    *

    v.                    *    Civil Action #02-CV-3567
                       JURY TRIAL DEMANDED
JAMES JANECKA, DAVIS R. RUARK,                    *
MATTHEW E. BROWN, GEORGE W.
HILL CORRECTIONAL FACILITY,                    *
OFFICE OF THE DISTRICT ATTORNEY
OF DELAWARE COUNTY, JANE & JOHN                    *
DOE'S, C.D. DRYDON [sic] AND
FOOD LION,                    *
         Defendants.
                     *

                 *    *    *    *    *    *

<div align="center">

**<u>MOTION OF COMMISSIONER CATHERINE DRYDEN AND</u>**
**<u>STATE'S ATTORNEY DAVIS R. RUARK FOR SUMMARY JUDGMENT</u>**

</div>

      Come now defendants Catherine Dryden, Commissioner of the District Court of Maryland,

in both her individual and official capacities, and Davis R. Ruark, State's Attorney for Wicomico

County, Maryland, in his official capacity (hereafter, collectively, "Maryland Defendants"), by their

undersigned attorneys, and file this motion for summary judgment of the §1983 claims against them,

together with a memorandum of points and authorities and appropriate exhibits in support thereof,

and for reasons state:

      1.      That claims against the Maryland Defendants, whether in an individual capacity or

an official capacity, are barred because neither one deprived Plaintiff of any right guaranteed under

the constitution or laws of the United States, including the right to due process and to freedom from

cruel and unusual punishment.

      2.      That neither Maryland Defendant had any personal involvement in accusing

<div align="center">

1

</div>

Baiamonte; serving him with a warrant, arresting him, and denying him bail in Pennsylvania,; failing to try him on Pennsylvania manslaughter charges, or exposing him to harm while incarcerated in Pennsylvania.

3.      That the Court lacks jurisdiction over Commissioner Dryden in her individual capacity because the complaint failed adequately so to name her.

4.      That Commissioner Dryden in her individual capacity did not receive adequate notice that plaintiff seeks damages against her personal assets.

5.      That Defendant Dryden in her individual capacity is entitled to qualified immunity because neither her issuance of a warrant for the arrest of Plaintiff, nor her lack of any subsequent action concerning Plaintiff, violated any legal norms that were clearly established at the time of her actions.

6.      That the Maryland Defendants, in their official capacities, are not "persons" as that term has been interpreted under 42 U.S.C. §1983 and thus are not within the scope of entities suable in a §1983 action.

7.      That claims against the Maryland Defendants in their official capacity are barred by sovereign immunity under the Eleventh Amendment to the United States Constitution.

8.      That the Court lacks jurisdiction over the Maryland Defendants in their official capacity.

9.      That claims against the Maryland Defendants in their official capacity are barred because plaintiff has failed to establish that any State of Maryland policy or custom played a part in any violation of federal law.

IV.   <u>CONCLUSION</u>

WHEREFORE, for all the reasons stated above, the Maryland Defendants respectfully pray that summary judgment be entered in their favor on the Complaint and each every claim therein.

<div style="margin-left:50%">

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General of Maryland


<u>s/ Kathleen J. Masterton</u>
KATHLEEN J. MASTERTON
Assistant Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
410-576-7293



<u>s/ John O. J. Shellenberger</u>
John O.J. Shellenberger
Chief Deputy Attorney General
Identification No. 09714


Attorneys for Defendants Dryden and Ruark

</div>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARK ANTHONY BAIAMONTE, | * |
| Plaintiff, | * |
| v. | *    Civil Action #02-CV-3567 |
| | JURY TRIAL DEMANDED |
| JAMES JANECKA, DAVIS R. RUARK, | * |
| MATTHEW E. BROWN, GEORGE W. | |
| HILL CORRECTIONAL FACILITY, | * |
| OFFICE OF THE DISTRICT ATTORNEY | |
| OF DELAWARE COUNTY, JANE & JOHN | * |
| DOE'S, C.D. DRYDON [sic] AND | |
| FOOD LION, | * |
| Defendants. | |
| | * |

\*    \*    \*    \*    \*    \*

**MEMORANDUM OF LAW OF COMMISSIONER**
**CATHERINE DRYDEN AND STATE'S ATTORNEY DAVIS R. RUARK**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Come now defendants Catherine Dryden, her individual and official capacities, and Davis

R. Ruark, in his official capacity (collectively, "Maryland Defendants"), by their undersigned

attorneys, and file this memorandum in support of their motion for summary judgment on the §1983

claims against them.

I.    INTRODUCTION AND BACKGROUND

Plaintiff Mark Anthony Baiamonte (hereinafter "Plaintiff") is an inmate in a Pennsylvania

correctional facility.  Defendant Catherine Dryden is a Commissioner of the District Court of

Maryland for District 2 (Wicomico County, Maryland), a judicial officer who makes determinations

of probable cause for the issuance of criminal charges and arrest warrants.  Defendant Davis R.

Ruark is the State's Attorney for Wicomico County, Maryland, an elected official responsible for

prosecutions and other criminal matters within Wicomico County.

In August 2000, defendant Police Officer M. E. Brown filed in the District Court of

Maryland for District 2 an application for charges for theft over $300 against Plaintiff based on an

alleged shoplifting incident in Fruitland, Maryland.  Ex. 1, Affidavit of Commissioner Dryden at 2.

The application came before Commissioner Dryden, who, pursuant to Maryland Courts and Judicial

Proceedings Code §2-607(c), determined that it indicated probable cause for the arrest of Mark

Baiamonte. *Id.* She issued a statement of charges pursuant to Maryland Rule 4-211(b)(1).[1]  *Id.*  A

copy of the application and the statement of charges are attached as Exhibit 2 and 3, respectively.

Pursuant to Md. Rule 4-212(d)(1), Dryden then issued an arrest warrant for Baiamonte (the

"Warrant"), a copy of which is attached as Exhibit 4. [2] *Id.*

The Fruitland police department later notified the State's Attorney's office that a warrant it

had requested for Baiamonte's arrest remained open; that he was not in Maryland; that he had been

arrested in the Commonwealth of Pennsylvania on charges of automobile manslaughter, aggravated

assault, and theft, stemming from an alleged incident in Pennsylvania; was still in Commonwealth

custody; and that the Fruitland police wanted him extradited to face the Maryland charges.  Ex. 5,

Affidavit of Davis Ruark at 2.   State's Attorney Ruark reviewed and approved the Fruitland

extradition request and returned it to the department, which sent it to Pennsylvania authorities. *Id.*

In early 2002, Ruark was told of a request Baiamonte filed with the District Court of

Maryland asking to have a warrant rescinded or else that he receive a speedy trial on the Maryland

charges.  *Id.*; *see* Ex. 6, "District Court of Maryland Criminal System Inquiry Event History

---

[1]  Md. Rule 4-211(b)(1) provides, "[A] judicial officer may file a statement of charges in the District Court against a defendant who has not been arrested for that offense upon written application containing an affidavit showing probable cause that the defendant committed the offense charged.  If not executed by a peace officer, the affidavit shall be made and signed before a judicial officer."

[2]  Md. Rule 4-212(d)(1) provides, "A judicial officer may...issue a warrant for the arrest of the defendant...upon a finding that there is probable cause to believe that the defendant committed the offense charged in the charging document and that (A) the defendant has previously failed to respond to a summons that has been personally served or a citation, or (B) there is a substantial likelihood that the defendant will not respond to a summons, or (C) the whereabouts of the defendant are unknown and the issuance of a warrant is necessary to subject the defendant to the jurisdiction of the court, or (D) the defendant is in custody for another offense, or (E) there is probable cause to believe that the defendant poses a danger to another person or to the community. A copy of the charging document shall be attached to the warrant."

Display" for Case No. 5H00019094 CR, *State v. Baiamante*, entry dated 12/12/2001 (011212).[3]  The Honorable R. Scott Davis (I.D. No. 9G0), a judge of the District Court of Maryland, referred Plaintiff to the Interstate Agreement on Detainers and Related Matters.  *See* Ex. 6, entry dated 12/14/2001.  State's Attorney Ruark was asked for an opinion and, upon inquiry, his office learned that Baiamonte had refused to waive extradition and that Pennsylvania had issued a Governor's Warrant of rendition, which would give Maryland the right to take custody of Baiamonte from the Pennsylvania authorities at the appropriate time.  Ex. 5, Ruark Affidavit at 2-3.  State's Attorney Ruark advised Judge Davis of this in a letter dated 2/14/01, a copy of which is attached as Exhibit 7.  Ruark advised that Plaintiff had been served with a Governor's Warrant in Pennsylvania; that Ruark believed that the District Court had no authority to quash a Pennsylvania Governor's Warrant; and that Baiamonte could not be released to Maryland authorities, as he was awaiting trial in Pennsylvania on charges including automobile manslaughter, aggravated assault, and theft.  Ex. 5 at 3; Ex. 7.

Neither Commissioner Dryden nor State's Attorney Ruark took any further action concerning plaintiff or his case.  Ex. 1 at 3 (Dryden); Ex. 5 at 3-4 (Ruark).  Plaintiff, however, continued making filings with the District Court for Maryland, unsuccessfully attempting to have his case dismissed or otherwise disposed of by a judge of that court.  See Ex. 6.

Mr. Baiamonte filed a Complaint pursuant to 42 U.S.C. §1983, naming as defendants a Pennsylvania jail; the store in which the alleged theft occurred; the Office of the District Attorney, Deleware County, PA; and four individuals, including Dryden and Ruark, who are named as proper persons without any indication as to the capacity in which each is sued.  Baiamonte asserts that all defendants unlawfully confined him, denied him bail, deprived him of liberty without due process,

---

[3]  The State court inadvertently misspelled Baiamonte's name as "Baiamante".  It is noted that this Court also misspelled it, as "Baimonte," in its order granting his request to proceed in forma pauperis.

subjected him to unusual punishment and a beating by another inmate, and to loss of potential employment. He claims that Dryden (whom he dubs "Defendant #7") issued a warrant based on an incomplete application for a statement of charges, and that Dryden and Ruark ("Defendant #2"), along with other defendants ("# # 1, 3, 4, 5, 6, and 8"), failed to bring him before a Maryland court to answer the charges. Baiamonte claims he prevailed in a prior habeas corpus proceeding against Defendant Janecka and the Commonwealth in the Court of Common Pleas in Deleware County, PA (Case No. 80144-01), which allegedly discharged him "from matter." For relief, he seeks a written apology to his family and damages of $10,000 per day per defendant for the time he has been confined, plus medical benefits for life and costs of the proceeding.

The Maryland Defendants filed a Motion to Dismiss, asserting that the Complaint failed to state a claim against them on which relief could be granted because, *inter alia,* it was barred by Eleventh Amendment immunity, judicial immunity, and prosecutorial immunity. The court interpreted the Complaint to be against the defendants in both their individual and official capacities; dismissed with prejudice the claims against Ruark in his individual capacity based on prosecutorial immunity; declined to dismiss those against Dryden in her individual capacity, holding that because she is not a judge she is not entitled to judicial immunity; and held that there were insufficient facts to decide the application of Eleventh Amendment immunity to them in their official capacity. Hence, the remaining claims against the Maryland Defendants are against Commissioner Dryden in her individual and official capacities and against State's Attorney Ruark in his official capacity.

## II.    STANDARD FOR GRANT OR DENIAL OF SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *La Fata v. Raytheon Co.,* 223 F.Supp.2d 668 (E.D.Pa.2002) (Brody, J.), *citing* Fed.R.Civ.P. 56(c); *Celotex*

*Corp. v. Catrett,* 477 U.S. 317 (1986).  A genuine issue of material fact exists when "the evidence

is such that a reasonable jury could return a verdict for the non-moving party."  *Hansberry v. City*

*of Philadelphia*, 232 F.Supp.2d 404 (E.D.Pa. 2002) (Brody, J.), *citing Anderson v. Liberty Lobby,*

477 U.S. 242, 248 (1986).  A court must determine "whether the evidence presents a sufficient

[factual] disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law."  *La Fata,* 223 F.Supp.2d 668, *citing Anderson v. Liberty Lobby,*

477 U.S. at 251-52.  At the summary judgment stage, the Court must view the evidence, and draw

all reasonable inferences, in the light most favorable to the non-moving party. *La Fata,* 223

F.Supp.2d 668, *citing Dici v. Com. of Pa.,* 91 F.3d 542, 547 (3d Cir.1996).  Once a party has filed

a summary judgment motion, the burden shifts to the nonmoving party to "set forth specific facts

showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  The nonmoving party "may not

rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.,* but must "support

its response with affidavits, depositions, answers to interrogatories, or admissions on file." *See*

*Celotex Corp.,* 477 U.S. at 324; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3rd

Cir.1990).

## III.    ARGUMENT

Section 1983 of Title 42, United States Code, provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage,
> of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress....

A §1983 claim for relief must comprise four separate elements: (1) a violation of rights protected

by the federal Constitution or created by federal statute or regulation;(2) proximately caused (3) by

the conduct of a "person" (4) who acted under color of State law. *See Martinez v. California,* 444

U.S. 277, *reh'g denied,* 445 U.S. 920 (1980).  Here, the failure of the first three of these elements

requires summary judgment in favor of the Maryland Defendants.

   A.    Neither Maryland Defendant Deprived Plaintiff of Federal Rights

   A plaintiff proceeding under 42 U.S.C. §1983 must establish, *inter alia,* that the conduct of

each defendant deprived him of a federally guaranteed right.  *West v. Atkins,* 487 U.S. 42 (1988).

The complaint must identify specific personal involvement–actual conduct--of each defendant who

allegedly harmed plaintiff. *Ross v. Meagan,* 638 F.2d 646 (3rd Cir. 1981); *see Rode v. Dellarciprete,*

845 F.2d 1195 (3d Cir.1988).  Courts need not credit bald assertions or legal conclusions, and

consistently reject legal or unsupported conclusions and unwarranted inferences, cast in the form

of factual allegations.  *Morse v. Lower Merion School Dist.,* 132 F.3d 902 (3rd Cir. 1987).

   Plaintiff broadly claims that the Maryland Defendants violated his rights to due process,

Complaint p. 4 no. 2; and to be free from cruel and unusual punishment, *id*. no. 4.   But the

Complaint reveals no allegations of fact that would establish the violation, personally, by Dryden

or Ruark, of any federal right.  The Statement of Claim asserts that

>   "every defendant" "unlawfully confined me...caused confinement by accusing me, charging
>   me, and serving me...denied [me] bail [violating] due process. Deprived freedom, by not
>   bringing [me] to justice; [caused me] unusual punishment...would not bring to justice or
>   denied justice...[I] endured beating by inmate causing bodily harm due to being incarcerated.
>   All defendants involved...Loss of potential employment...Disregard of all and any rights...

Complaint p. 4.  These are not factual allegations, but the kind of legal conclusions cast as factual

allegations that cannot withstand summary judgment scrutiny.  The only specific acts attributed to

Ruark, a.k.a. "defendant no. 2," and Dryden, a.k.a. "defendant no. 7," are that another defendant

"applie[d] for charges to" no. 7, who "sign[ed] out warrant from uncompleted application form."

Complaint at [6].  He alleges that another defendant sent a warrant to no. 2, that other defendants

"holds me per" nos. 2 and 7, and that nos. 2 and 7 "makes no attempt to bring me to justice."  *Id.*

In other words, he claims Dryden received an incomplete application for a statement of charges;

issued an arrest warrant upon that incomplete application; told others to "hold" him; and made no attempt to try him.  He alleges that Ruark received a warrant; told others to "hold" Baiamonte; and made no attempt to try him.  Even if any of this were true, none of this establishes that Dryden or Ruark deprived Baiamonte of due process and/or caused the cruel and unusual punishment he allegedly experienced in a Pennsylvania jail.  And the affidavits of Commissioner Dryden and State's Attorney Ruark, attached hereto as Exhibits 1 and 5, respectively, establish that they did not.

Defendant Dryden's duties are established by Article IV, §41G of the Maryland Constitution, and include a duty to exercise certain judicial powers as to warrants of arrest.  Ex. 1 at 1.  She makes determinations of probable cause and issues statements of criminal charges and arrest warrants.  *Id.* On August 1, 2000, she received an application for a Statement of Charges against Baiamonte, compiled by Officer Matthew Brown.  *Id.*  Before then, she knew nothing of Baiamonte.  She reviewed the application, which was sworn to under oath, and found that it contained sufficient information to make a determination as to probable cause.  *Id.*  She found that its contents indicated that probable cause existed to arrest Baiamonte for the crime it described.  *Id.* at 2.  She issued a Statement of Charges and an Arrest Warrant On Charging Document authorizing Baiamonte's arrest for the reasons set forth in the Statement of Charges. *Id.* Since August 2000, she has had no involvement with Baiamonte's case.  She has never met or communicated with Baiamonte, and except as to the lawsuit he filed against her, has not communicated with any person or entity about him.  *Id.*

As a District Court Commissioner, Dryden is not authorized to have, and does not have, any continuing jurisdiction as to a particular accused, case, or matter.  *Id.* at 3.  Rather, Commissioners sit and hear matters that come before them at the time they are on duty; attend to each; and, upon completing that matter that day, end their role as to that matter and those individuals. Ex. 1 at *3.* Dryden had no duty to or concerning Baiamonte once she completed her probable cause determination on August 1, 2000. *Id.* Until served with this suit, she was unaware that he allegedly was

arrested; detained in Pennsylvania; was seeking to have his cause heard; or was harmed by a fellow inmate. She had no involvement in any of those alleged actions. *Id.*

State's Attorney Ruark has no personal knowledge of nor any involvement in the application for a Statement of Charges against Baiamonte; a determination of probable cause as to the contents of that application; or the issuance of an arrest warrant authorizing Baiamonte's arrest. Ex. 5 at 2. His first involvement in this case occurred when the Fruitland police told his office that a Warrant it had requested on Baiamonte still was open; that Baiamonte had been arrested in Pennsylvania and was still in that state's custody; and that the Fruitland police wanted him extradited to face charges in Maryland. *Id.* As per his usual practice, Ruark personally reviewed the department's extradition request. He approved it and returned the approved request to the department. *Id.* He believes Fruitland police sent the extradition request to Pennsylvania authorities, but the State's Attorney has no duty to follow up on the status of extradition requests by police departments, and it is not his practice to do so. *Id.* His office has never been told that Baiamonte was available for pickup from Pennsylvania authorities. *Id.*

Ruark's only other involvement with Baiamonte was in early 2002, when he was told that Baiamonte wanted the District Court of Maryland either to have a warrant rescinded or to receive a speedy trial in Maryland. *Id.* Upon inquiry, the State's Attorney learned that Baiamonte was in jail in Pennsylvania, had refused to waive extradition and, and that the Commonwealth had issued a Governor's Warrant of rendition, which would give the State of Maryland the right to take custody of Baiamonte at the appropriate time. *Id.* He also learned other information about Baiamonte's status, and thereafter informed the Maryland District Court judge who was handling Baiamonte's request, via letter dated February 12, 2002, that Baiamonte

> has been served with a Governor's Warrant in the State of Pennsylvania. Mr. Baiamonte cannot be released to Maryland authorities at this point, however, because he is awaiting trial in Pennsylvania for local offenses, which include automobile manslaughter, aggravated assault and theft. Under the circumstances, I do not believe that the District Court has

jurisdiction to quash or dismiss a lawfully obtained Governor's Warrant.

Ruark Affidavit, Ex. 5 at 3; Letter, Ex. 7.  Ruark is not authorized to decide questions filed with the District Court, and did not decide Baiamonte's motion to rescind. Ex. 5 at 3.  In fact, the Honorable R. Scott Davis decided to deny Baiamonte's request.  *Id.*

Ruark has had no involvement with Baiamonte or his case since the February 2002 letter to Judge Davis.  *Id.*  Except for that letter, communications pertaining to the instant lawsuit, and a 2002 telephone call to a Pennsylvania  assistant state's attorney who provided information about the Governor's Warrant, Ruark has not communicated with any person or entity about Baiamonte.  *Id*. Ruark has never met or communicated with Baiamonte, Warden Janecka or the George W. Hill Correctional Facility, and has never communicated with Commissioner Dryden about Plaintiff. Ex. 5 at 3-4.  Like Dryden, Ruark was unaware, until served with this lawsuit, that Baiamonte allegedly was harmed in a Pennsylvania jail. *Id.*  As a Maryland constitutional officer, Ruark has no authority in Pennsylvania and does not control any activities by anyone associated with its government, and had no involvement in the acts or decisions in Pennsylvania pertaining to Baiamonte. *Id.*

In short, Dryden's only relevant actions were to determine that probable cause existed to arrest Baiamonte and to issue a Maryland arrest warrant.  Ruark's only relevant actions were to approve an extradition application and to provide a Maryland District Court judge with requested information as to Baiamonte's situation in February 2002.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *Sutton v. Rasheed,* 323 F.3d 236 (3rd Cir.2003).  Clearly, neither Maryland Defendant had personal involvement in accusing Baiamonte; serving him with a warrant, arresting him, and denying him bail in Pennsylvania; failing to try him on Pennsylvania manslaughter charges, or exposing him to harm while incarcerated in Pennsylvania. As there is no genuine issue of material fact on which Plaintiff can proceed to a jury, the Maryland

Defendants are entitled to judgment in their favor.[4]

      B.    <u>This Court May Not Exercise Jurisdiction Over Any Maryland Defendant</u>

Even if Plaintiff could establish that personal conduct of either Maryland Defendant deprived him of a federal right, that violation only would be actionable if the court is authorized to exercise jurisdiction over that defendant in a §1983 case. As addressed below, this principle implicates the capacity in which one is sued, the scope of the §1983 statute, and the available immunities.

      1.    <u>The Court lacks jurisdiction over Commissioner Dryden in her individual capacity because the complaint failed adequately so to name her.</u>

A complaint against a State employee must indicate whether damages are sought from the defendant personally; from the State, as the entity responsible for its employees' conduct; or both. *See Nix v. Norman,* 879 F.2d 429 (8th Cir.1989) (individual-capacity suits must clearly notify defendant of personal nature of suit). Modern pleading is less rigid than in the past, but the fact remains that if one is to be subject to suit, one must be properly named and clearly notified of the potential to pay damages individually. *Brandon v. Holt,* 469 U.S. 464 (1985) (Burger, C.J., concurring in judgment). This requirement stems from the Federal Rules and from concepts of fair notice, Its rationale is illustrated by examining the practical and doctrinal differences between personal and official capacity actions. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985).[5]

---

    [4]  Even if, *arguendo* a Maryland Defendant was negligent, it is well established that merely negligent or careless conduct is insufficient for a constitutional cause of action, and is not a "deprivation" for §1983 purposes. *Davidson v. Cannon,* 474 U.S. 344, 347(1986)(14th Amendment not implicated by official's lack of due care causing unintended injury to liberty); *Daniels v. Williams,* 474 U.S. 327 (1986)(Court rejects "reasoning that would make 14th Amendment a font of tort law to be superimposed upon whatever system" already is administered by States). Bald allegations of intent or reckless disregard do not convert negligence into a wrong of constitutional proportions. *Justice v. Dennis,* 793 F.2d 573, 578-79 (4th Cir. 1986).

    [5]  Fed.R.Civ.P. 8(a) requires "a short and plain statement of the grounds" for jurisdiction and relief. Rule 9(a) provides, in part, that "It is not necessary to aver the capacity of the party to sue or to be sued...except to the extent required to show the *jurisdiction* of the court." These rules liberalized pleading, but did not alter the *jurisdiction* of federal courts; they cannot confer jurisdiction for suits against state officials in view of the Eleventh Amendment's jurisdictional limit on federal courts in civil rights cases against states and state employees. *See Nix,* 879 F.2d at 431 (*citing Rose v. Nebraska,* 748 F.2d 1258 (8th Cir.1984), *cert. denied,* 474 U.S. 1014 (1985)); *cf.* C. Wright & A. Miller, Federal Practice & Procedure: Civil §1293 at 392(in action against U.S., plaintiffs must plead facts showing right to sue sovereign).

For example, individual-capacity suits seek to impose personal liability on a government official for her actions taken under color of state law. *Id.* To do so in a §1983 action, it is enough to show that the official, acting under color of state law, caused a deprivation of a federal right. *See, e.g., Monroe v. Pape,* 365 U.S. 167 (1961). An individual-capacity defendant has available to her personal immunity defenses, such as objectively reasonable reliance on existing law. *See Imbler v. Pachtman,* 424 U.S. 409 (1976) (absolute immunity); *Harlow v. Fitzgerald,* 457 U.S. 800 (1982) (qualified immunity). Punitive damages are allowable.

Official-capacity suits, in contrast, are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N. Y. Dept. of Social Services,* 436 U.S. 658, 690 n. 55 (1978). As long as the government has notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, treated as a suit against the entity. *Brandon, supra,* 469 U.S. at 471-472. It is *not* against the official personally, for the real party in interest is the government. *Kentucky v. Graham,* 473 U.S. at 167. Damages come from the funds of the government entity itself, and personal immunity defenses and punitive damages are unavailable. *Oklahoma City v. Tuttle,* 471 U.S. 808, 817 (1985)*; see Smith v. Wade,* 461 U.S. 30 (1983). Only immunities that can be claimed by the entity, *qua* entity, such as Eleventh Amendment immunity, are available to the official. *Kentucky v. Graham,* 473 U.S. at 168; *see Brandon v. Holt,* 469 U.S. 464. In an official-capacity suit, the entity's "policy or custom" must have played a part in the federal violation. *Kentucky v. Graham,* 473 U.S. at 167; *Monell, supra.* Should the official die pending resolution of a personal-capacity action, the plaintiff pursues the action against the decedent's estate, but in an official-capacity suit in federal court, replacement of the named official results in automatic substitution of the official's successor in office. *Id.; see* Fed.R.Civ.P. 25(d)(1).

Given the differing defenses and liabilities that flow from the capacity in which a defendant is sued, the need to plead the capacity in which defendants are sued is clear. And it applies to *pro*

11

*se* litigants no less than to represented parties. *See, e.g., Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.)

(duty to be less stringent with *pro se* complaint does not require court to conjure up unplead

allegations), *cert. denied,* 464 U.S. 986 (1983); *Jarrell v. Tisch,* 656 F.Supp. 237 (D.D.C.1987) (*pro*

*se* plaintiffs must plead with requisite specificity so as to give defendants notice); *Holsey v. Collins,*

90 F.R.D. 122 (D.Md.1981) (even *pro se* litigants must meet minimum standards).

Some courts of appeals *mandate* that a complaint specify the capacity in which a defendant

is sued. *See Wells v. Brown,* 891 F.2d 591, 593 (6th Cir.1989) (*citing Will v. Michigan Dep't of State*

*Police,* 491 U.S. 58 (1989) (§1983 plaintiffs must clearly plead that they are suing State defendants

in individual capacity for damages, not just in capacity as state officials)); *Nix v. Norman,* 879 F.2d

429, 431 (8th Cir.1989). In *Melo v. Hafer,* 912 F.2d 628 (3d Cir.1990), *aff'd,* 112 S.Ct. 358 (1991),

the Third Circuit adopted a more flexible approach, holding that courts must interpret the pleadings

and examine the course of the proceedings. *Id.* at 636 n. 7, *citing Gregory v. Chehi,* 843 F.2d 111,

119-20 (3d Cir.1988); *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985) ("course of proceedings"

indicates nature of liability sought to be imposed).

Upon the Maryland Defendants' motion to dismiss of, the court, *sua sponte,* held that the *pro*

*se* pleadings named both defendants in both capacities. But a closer read of the Complaint, in light

of the abovestated principles and the summary judgment standards, shows that Dryden was sued

only in her official capacity. The caption names her as simply "C.D. Drydon" [sic], and in the

section identifying parties, as "C.D. Drydon #2054, Place of Employment District Court of

Wicomico County, Maryland." Compl't p. 1, 5 (the number "2054" is Dryden's official identifier).

The address given is her work address. *Id.* Nowhere does the Complaint state that she is sued

personally. Her actions are characterized purely in terms of her official capacity, e.g., she "sign[ed]

out warrant from uncompleted [warrant] application form." Plaintiff does not seek punitive damages

from her. When Dryden was served with and reviewed the Complaint, she did not think Baiamonte

was trying to get damages from her personally, but only from her employer, the State. Ex. 1 at 3.

Nothing in the Complaint alerts her otherwise. In short, plaintiff's failure to give notice that he was

suing Dryden in her individual capacity means that, in that capacity, she is entitled to judgment in

her favor.

>    2.    The Maryland Defendants, in their official capacities, are not "persons" under §1983.

An action under §1983 only may be brought against a "person" as that term is interpreted

under 42 U.S.C. §1983. As each State is a sovereign, no State is a "person" under this federal law

and thus no §1983 suit may be brought against a State or its units. *See Will v. Michigan,* 491 U.S.

at 71. As noted, suit against an individual in her official capacity is, functionally, a suit against the

office itself. *Id; see Kentucky v. Graham,* 473 U.S. 159 (official capacity suits merely another way

of pleading action against entity of which officer is an agent). It follows that an action against a

defendant in her official capacity also is not a suit against a "person" subject to suit under §1983.

*See Will,* 491 U.S. at 71 (though officials literally are persons, an official-capacity suit is against the

officials' office and thus against the state itself). Hence, a suit against Commissioner Dryden in her

official capacity is the equivalent of a suit against the District Court of Maryland, while a suit

against Ruark in his official capacity is the same as a suit against the Office of the State's Attorney.

Both entities are units of the State of Maryland. As the State agencies that employ the Maryland

Defendants are not "persons" who may be sued under §1983, neither are the Maryland Defendants.

*Muntjan v. Waltemeyer,* 166 F.Supp.2d 424 (D.Md. 2001), *appeal vacated and dismissed*, 38

Fed.Appx. 170, 2002 WL 1269905 (4th Cir. 2002) (§1983 claims against Office of State's Attorney

and individual ASAs dismissed in part because Office is not "person" suable under §1983).

>    3.    Claims Against The Maryland Defendants In Their Official Capacity Are Barred By
>          Sovereign Immunity Under the Eleventh Amendment.

The rule that a defendant be a "person" for purposes of amenability to suit under §1983,

discussed above, is related to and arises out of the principles of sovereign immunity that are enshrined in the Eleventh Amendment to the United States Constitution.[6]  Absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State and its agencies in federal court.[7]  *Kentucky v. Graham,* 473 U.S. at 169; *see, e.g., Ford Motor Co. v. Dep't of Treasury of Indiana,* 323 U.S. 459, 464 (1945).  Because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents," *Brandon, supra,* 469 U.S. at 471, this bar also applies when State officials are sued for damages in their official capacity. *Cory v. White,* 457 U.S. 85, 90 (1982); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974).  Section 1983 did not abrogate a State's Eleventh Amendment immunity.  *Quern v. Jordan,* 440 U.S. 332 (1979); *Edelman,* 415 U.S. 651.  And the State of Maryland has not waived its sovereign immunity to actions of this type.[8]

Where an individual defendant asserts Eleventh Amendment immunity to official capacity claims, the sovereign immunity entitlement of the entity on whose behalf the individual acted must be considered.  *Christy v. Pennsylvania Turnpike Com'n* 54 F.3d 1140 (3rd Cir. 1995).  As to whether or not the employer of each Maryland Defendant is an arm of the State, entitled to Eleventh

---

[6]  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...."  U.S. Const. amend. XI.  It has consistently been interpreted to immunize an unconsenting state " 'from suits brought in federal courts by her own citizens as well as by citizens of another state.' " *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1984) (citations omitted).

[7]  As the Eleventh Amendment provides not only immunity from liability, but also from suit, the immunity "is for the most part lost as litigation proceeds past motions practice." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 113 S.Ct. 684 (1993); *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1984). Hence, Eleventh Amendment issues must be decided as early as possible in a case.  *Will v. Michigan, supra.*

[8]  Maryland has only waived sovereign immunity for tort actions for damages, and only to the extent provided in the Maryland Tort Claims Act, Md. Code Ann. State Gov't Art. ("SG") §12-101 *et seq.*  The Act allows actions for money damages based on alleged negligence of State personnel, acting within their scope employment, to be brought against the State, if the claimant meets certain pre-conditions. SG §12-104. It immunizes State personnel from liability for such acts, absent malice or gross negligence.  SG §12-105 and CJP §5-522.  The Act "does not ...waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States...including any defense that is available under the 11th Amendment to the United States Constitution.."  SG §12-103(2).

Amendment immunity which extends to the official-capacity defendants, three factors are relevant: (1) whether payment of a judgment would come from the State Treasury (this also assesses whether the agency has enough funds to satisfy a judgment and whether the sovereign has immunized itself from responsibility for the agency's debts); (2) the agency's status under state law (including how state law treats it, whether it is separately incorporated, whether it can sue and be sued in its own right, and whether it is immune from state taxes); and (3) the degree of autonomy the agency enjoys. *Id.,* 54 F.3d at 1145; *Chisolm v. McManimon,* 275 F.3d 315 (3rd Cir. 2001); *see Fitchik v. N. J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989)(en banc). The applicability of these factors to the District Court of Maryland and the Office of the State's Attorney is analyzed below.

(a).     Funding.  One important factor is whether a judgment in the suit would be paid from the State treasury. *See Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir.1999); *Christy*, 54 F.3d at 1140; *Fitchik*, 873 F.2d at 659. This reflects the Eleventh Amendment's central goal: preventing federal court judgments that must be paid out of a State's treasury.  *See Hess v. Port Authority Trans-Hudson Corp.,* 115 S.Ct. 394 (1994); *Edelman v. Jordan,* 415 U.S. 651.  In that regard, Title 1 of the Maryland Courts and Judicial Proceedings Article provides, in pertinent part, as follows:

> (a) General.  - The cost of maintenance, operation, and administration, and of providing necessary facilities, including capital costs, of the District Court shall be borne exclusively by the State, and, except as provided in Title 7 of this article, or otherwise expressly by law, all revenues derived from the operation and maintenance of the District court shall enure to the general funds of the State.

> (b) Budget.  - The costs listed in subsection (a) of this section shall be included and itemized in the annual State budget or in the annual construction loan as submitted to the General Assembly by the Governor and subject to the power of the General Assembly with respect to budget appropriations.

Md. Code Ann. CJP §1-608.  Hence, the State completely controls the entity's ability to obtain funds, and its financial interest would be directly and adversely affected by diminution of the funds in question.  *Fitchik,* 873 F.2d at 661. As the District Court has no authority to raise funds by its own action and depends wholly on the State treasury, any judgment against it (or its employee in her

official capacity) necessarily would come out of State funds.  Nor has the State immunized itself from responsibility for District Court debts; to the contrary, the State has waived "the immunity of the State and of its units" with respect to certain actions pursuant to the Maryland Tort Claims Act. Ex. 1 at 4.  All costs for the District Court's "maintenance, operation and administration" are "borne exclusively by the State." CJP §1-608.  Further, the Board of Public Works for the State of Maryland is authorized to pay "a settlement or judgment against the State or any State personnel" out of "money appropriated for that purpose in the State budget; money appropriated to the State Insurance Trust Fund for that purpose; [or] the General Emergency Fund."  Md. Code Ann. State Gov't §§12-404, 12-501(a).  These facts irrefutably demonstrate that the District Court is the alter ego of the State for purposes of the Eleventh Amendment analysis.

Funding for the office of a State's Attorney in Maryland is legally required to come from the county which the office serves, not from the State budget.  Md. Code Ann. Art. 10 §40(w).  But under Maryland law, the prosecutorial discretion exercised by the State's Attorney for a particular county is not a matter of county policy, because the prosecutor is a State official who acts only pursuant to State mandates; thus, the State, not a county, is held liable for the wrongful exercise of prosecutorial discretion.  *Jones v. Ziegler,* 894 F. Supp. 880 (D.Md. 1995), *aff'd, Jones v. Wellham,* 104 F.3d 620 (4th Cir. 1997).  See Ex. 5 at 5.

Thus, it is established that (1) a judgment against the District Court or the Office of the State's Attorney (or their employee sued in his official-capacity) would operate as a judgment against the Treasury of Maryland; (2) they lack independent financial resources sufficient to pay a potential judgment against them; and (3) the State of Maryland would be under an obligation to cover any such potential judgment against either one.

(b).    Status at State Law.    The second general factor in determining whether the units are an arm of the State of Maryland is whether, under State law, they are treated as independent

entities, or as surrogates for the state.  The District Court of Maryland is established as a court of

original jurisdiction by Article IV, §41A of the Maryland Constitution, under the ultimate authority

of the Chief Judge of the Maryland State Court of Appeals.  Md. Const. Art. IV, §41E.  The office

and duties of district court commissioner are established under Article IV, §41G of the Maryland

Constitution, pursuant to which commissioners receive compensation as prescribed by Maryland

state law and exercise the powers prescribed by Maryland state law as to warrants of arrest, bail or

collateral, et al.  These are attributes of the sovereign power of a state.

It is equally clear that the Office of the State's Attorney for a county is a unit of State

government.  *Valle v. Pressman,* 229 Md. 591 (1962), squarely so holds:

> Appellants, while arguing that a State's Attorney is not a State-wide Officer within the
> meaning of the election statutes, do not challenge [the] holding that a State's Attorney
> is a State rather than a local officer. We find it plain that they could not successfully
> do so. The office is created by the Constitution which in Art. 5, Sec. 7, provides (in
> parts here pertinent): 'There shall be an Attorney for the State in each county, and the
> City of Baltimore, to be styled 'The State's Attorney,' who shall be elected by the
> voters thereof * * * and be subject to removal * * * by a vote of two- thirds of the
> Senate, on the recommendation of the Attorney-General.' Removal is thus a State and
> not a local function. The naming of a successor to a State's Attorney who dies or
> resigns during his term is confided to the Judges of the political subdivision in which
> he was serving, and Maryland Judges are Officers of the State. Attorney General
> Armstrong ruled in 6 Op. of the Attorney General 427 that a State's Attorney was a
> State Officer; and the Supreme Court, in *Spielman Motor Sales Co. v. Dodge,* 295
> U.S. 89, 93, 55 S.Ct. 678, 679, 79 L.Ed. 1322, 1324, quoted the Court of Appeals of
> New York in *Fellows v. City of New York* (1876), 8 Hun. 484, 485, as follows: "It is
> conceded that the district attorney is a State Officer.  It could not well be questioned,"
> and held a District Attorney to be in a true sense an officer of the State.

*Valle,* 185 A.2d at 374.  Additionally, State's Attorneys "shall perform such duties and receive such

salary as shall be prescribed by the General Assembly," Maryland's legislative body.  Md. Const.

Art. V §9.  The foremost of these is that "The State's Attorney for each county and the city of

Baltimore shall, in such county or city, prosecute and defend, *on the part of the State,* all cases in

which the State may be interested...." Md. Code Ann. Art. 10 §34 (emphasis added).  The uncontro-

verted State status of the State's Attorney's has resulted in the dismissal of §1983 suits against

State's Attorney's offices on Eleventh Amendment grounds. *See, e.g., Doe v. Pocomoke City*, 745 F.Supp. 1137 (D.Md. 1990); *Muntjan v. Waltemeyer*, 166 F.Supp.2d 424 (D.Md. 2001), *appeal vacated and dismissed*, 38 Fed.Appx. 170, 2002 WL 1269905 (4th Cir. 2002) (§1983 claims against Office of the State's Attorney for Baltimore City and individual ASA dismissed on Eleventh Amendment sovereign immunity grounds).  While the administrative expense of operating each State's Attorney's office is borne by the county the Office serves, because the prosecutor is a State official who acts only pursuant to State mandates, the prosecutorial discretion exercised by the State's Attorney for a county is not a matter of county policy, thus, the State, not a county, is liable for any wrongful exercise of prosecutorial discretion. *Jones v. Ziegler,* 894 F. Supp. 880 (D.Md. 1995), *aff'd, Jones v. Wellham,* 104 F.3d 620 (4th Cir. 1997). [9]

Neither the District Court of Maryland nor a State's Attorney's office is separately incorporated or subject to state or local taxation.  District Court Commissioners and State's Attorneys, like all employees of the State of Maryland, enjoy the protection from liability for State employees acting within the scope of State employment provided byTitle 12 of the Md. Code Annotated, State Government Article, "Immunity and Liability," also known as the Maryland Tort Claims Act.  Ex. 1, Dryden Aff. at 2, 4; Ex. 5, Ruark Aff. at 4.  In short, under the "status under state law" factor, both a State's Attorney's office and the District Court of Maryland are arms of the State of Maryland.

(c).   <u>Autonomy</u>.   It is beyond cavil that the District Court of Maryland is part of the Judicial branch of the State government, is "vested" with "the judicial power of this State," and has

---

[9]  In *Lowery v. Prince George's County,* 960 F.Supp. 952 (D.Md. 1997), there was "no doubt that the State's Attorney for each county...long have been considered to be state officials in Maryland and...that they meet the *Ristow* indicia in terms of statutory underpinning, the duties and functions of the office and state power over the office."  As the court was unable to address which fiscal font would be tapped to satisfy a judgment, it declined to resolve a State's Attorney's claim to Eleventh Amendment immunity and resolved the case in his favor on other grounds, even while noting that "it is not imperative to a finding of Eleventh Amendment immunity that a judgment against the State's Attorney be enforceable against the state treasury."

no autonomy from the State.  *See, e.g.*, Md. Const. Art IV §1.  It is subject to the rules concerning practice, procedure, and administration adopted by the Court of Appeals (the highest court in Maryland), which have the force of law.  *Id.* at §18; CJP §1-201.  Its judges are appointed by the Governor, with advice and counsel of the Maryland Senate, and their number may be altered only by the General Assembly, subject to constitutional limits. Md. Const. Art IV §§41C, 41D.

A State's Attorneys office too has little autonomy from the State.  Indeed, the State's Attorney IS the State: the caption of all prosecutions by that office are entitled "State of Maryland versus _____[defendant].  Ex. 5 at 1-2.  Prosecutorial discretion is exercised pursuant to State mandates.  Ex. 5 at 4.  A State's Attorney may be removed from office by the Maryland Senate, ensuring his conformity with State policy.

These factors all lend obvious support to a finding of sovereignty on the part of both governmental entities. *See Peters,* 16 F.3d at 1351-52.  Nor is there any authority for a contrary finding: counsel have found no provision in the Maryland Code authorizing the District Court or a State's Attorney's office to enter contracts in its own name, issue bonds and notes, sue in its own name; or purchase and own property, all of which are traditional indicators of independent status, and both Dryden and Ruark maintain that there is no such authority. See Ex. 1 at 4; Ex. 5 at 5.

(d).    The Totality of Factors.        Both the District Court of Maryland and the office of the State's Attorney for Wicomico County satisfy each of the three factors above, to a greater or lesser extent.  The most important of the three, the funding factor, heavily supports the conclusion that both units are arms of the State of Maryland.  State law status and relative autonomy are equally persuasive.  Considering the factors in their totality, *see Bolden,* 953 F.2d at 821, it is clear both units are arms of the State.  Hence, the Eleventh Amendment gives each unit, and each employee of theirs sued in their official capacities, complete immunity from a §1983 damages claim in federal court.  *See Quern v. Jordan,* 440 U.S. 332.  Hence, summary judgment in their favor is warranted.

C.    Defendant Dryden Individually Is Entitled To Qualified Immunity

In the event that this court decided that Baiamonte has evinced the violation of his constitutional rights by Commissioner Dryden, she is nonetheless protected from liability, in her individual capacity, by the doctrine of qualified immunity. *See, e.g., Sutton v. Rasheed,* 323 F.3d 236 (3rd Cir.2003), *citing Wilson v. Layne,* 526 U.S. 603, 609 (1999). A State official sued individually for monetary relief is entitled to qualified immunity if her acts were objectively reasonable and did not violate legal norms that were clearly established at the time of the challenged actions. *Id.; See Kentucky v. Graham,* 473 U.S. at 166-67, *Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982); *Mitchell v. Forsyth,* 472 U.S. at 528.[10] As to objective reasonableness, qualified immunity "gives ample room for mistaken judgments." *Malley v. Briggs,* 475 U.S. 335, 343 (1986). For a right to be "clearly established, " the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. at 640.

Baiamonte claims that Commissioner Dryden issued a warrant based on an incomplete application for a Statement of Charges. Her testimony is that she received an application for a Statement of Charges against Baiamonte, compiled under oath by Officer Brown; reviewed it; made a determination that its contents indicated that probable cause existed for Baiamonte's arrest for the crimes described in the application; and that she therefore issued and signed a Warrant authorizing his arrest. Ex. 1, Dryden Aff. at 2. The application for a statement of charges, Ex. 2, reveals that the Commissioner's actions were objectively reasonable: it is sworn to by a police officer and sets out facts pertaining to an alleged theft at a store, as to which there were two eyewitnesses, a description of the perpetrator that matched Plaintiff, a license plate number of the "getaway vehicle"

---

Of course, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 111 S. Ct. at 1793. As shown above, because plaintiff has not asserted such a right, the court need not even reach the issue of qualified immunity.

which was registered to Plaintiff's father, and a photo identification of Plaintiff by an eyewitness. Hence, Dryden's finding that there was probable cause to issue a warrant for Plaintiff's arrest was "objectively reasonable."  Even supposing that the application was "incomplete," plaintiff had no constitutional right to a probable cause determination made on a "completed" application, only one which is sufficient to allow a judgment to be made.  And, even if the Commissioner had made a mistake in judgment on this issue, qualified immunity nevertheless would apply.

Baiamonte's other factual allegation against Dryden is that, after issuing the arrest warrant, she made no attempt to bring him to trial.  The problem with this claim is that it is not her job to do so.  A Commissioner is not authorized to have, and does not have, continuing jurisdiction as to any particular accused, defendant, case, or matter.  Ex. 1, Dryden Aff. at 3.  The limited role of this official is to hear and address matters that arise before them at the time they are on duty; upon completing that matter that day, their role as to the matter and the individuals involved is at an end.  *Id.*  Dryden had no continuing responsibility or duty to or concerning Baiamonte once she made her probable cause determination on August 1, 2000.  *Id.*  Until served with this lawsuit, she was unaware that Baiamonte allegedly had been arrested; was detained; was in Pennsylvania; was in jail; was seeking to have his cause heard in a court of law; or was beaten or harmed by a fellow inmate, and even had she known, had no right or authority to do anything about it.  *Id.*

In sum, neither Dryden's issuance of the arrest warrant, nor her lack of any further action concerning Plaintiff, violate any legal norms that were clearly established at the time of her actions.  Hence, she is qualifiedly immune from liability in this case.

      D.    <u>Plaintiff Has Failed to Establish That a State Policy<br>Or Custom Played a Part in Any Violation of Federal Law.</u>

Aside from all other arguments, a plaintiff only may maintain a §1983 suit against a State official in his or her official capacity if the government entity's "policy or custom" played a part in

21

the alleged violation of his federally protected rights.  *Hafer v. Melo,* 112 S.Ct. 358, 361-62 (1991);

*Kentucky v. Graham,* 473 U.S. at 166, *quoting Monell,* 436 U.S. at 694;*Oklahoma City v. Tuttle,* 471

U.S. 808, 817-818 (1985).  A governmental entity is liable under §1983 only when the entity itself

is a " 'moving force' " behind the deprivation, *Polk County v. Dodson,* 454 U.S. 312, 326 (1981).

Here, plaintiff has not even pled any generalized State policy or custom that is relevant to

the claims he seeks to pursue, much less pointed to a specific policy or custom that would suggest

that the State officials he sues acted as they did towards him pursuant to and in furtherance of a State

policy that violates federal law.  The "customs or policies" under which the Maryland Defendants

acted–that is, the State constitutional provisions and statutes discussed earlier in this brief–are in

perfect accord with federal requirements.  The attached affidavits of Dryden and Ruark demonstrate

that there are no other pertinent policies or customs at operation in this matter.  Ex. 1; Ex. 5.  As a

result, there can be no §1983 liability against any official capacity defendant.

IV.    <u>CONCLUSION</u>

WHEREFORE, for all the reasons stated above, the Maryland Defendants respectfully pray

that summary judgment be entered in their favor on the Complaint and each every claim therein.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General of Maryland

<u>s/ Kathleen J. Masterton        </u>
KATHLEEN J. MASTERTON
Assistant Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
410-576-7293

<u> s/ John O. J. Shellenberger        </u>
John O.J. Shellenberger
Chief Deputy Attorney General
Identification No. 09714

Attorneys for Defendants Dryden and Ruark

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

MARK ANTHONY BAIAMONTE,                    *

        Plaintiff,                                      *

      v.                                                   *        Civil Action #02-CV-3567
                                                                         JURY TRIAL DEMANDED
JAMES JANECKA, DAVIS R. RUARK,      *
MATTHEW E. BROWN, GEORGE W.
HILL CORRECTIONAL FACILITY,          *
OFFICE OF THE DISTRICT ATTORNEY
OF DELAWARE COUNTY, JANE & JOHN   *
DOE'S, C.D. DRYDON [sic] AND
FOOD LION,                                                *
          Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion of Commissioner Catherine Dryden and State's

Attorney Davis R. Ruark for Summary Judgment and its supporting Memorandum of Law have

been filed electronically and are available for viewing and downloading from the Court's

Electronic Case Filing (ECF) system.  A true and correct copy of the Motion and Memorandum

were mailed on August 8, 2003 by first class mail, postage prepaid, to:

Mark Anthony Baiamonte (#101123)
 Allegheny County Jail
 950 2nd Avenue, Pittsburg
 Pennsylvania 15219-3100

Carl J. DiCampli, Esquire
Christopher J. Pakuris, Esquire
Margolis, Edelstein
The Curtis Center, Fourth Floor
Independence Square West
Philadelphia, PA 19106-3304

Marco P. DiFlorio, Esquire
Rawle & Henderson, LLP
Ten Lake Ctr Executive Park, Suite 204
401 Rte 73 North

Marlton, NJ 08053

Christopher R. Mattox, Esquire
Diorio & Sereni, LLP
Front & Plum Streets
P.O. Box 1789
Media, PA 19063

Robert P. DiDomenicis, Esquire
Holsten & Associates
One Olive Street
Media, PA 19063

s/ Kathleen J. Masterton
KATHLEEN J. MASTERTON
Assistant Attorney General